**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| WANDA J. ODEN MEYERS,[1] | DOCKET NUMBER |
| Appellant, | SF-0752-17-0585-I-1 |
| v. | |
| DEPARTMENT OF THE AIR FORCE, | DATE: August 15, 2023 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[2]

Wanda J. Oden Meyers, Culver City, California, pro se.

Jeffrey Baldridge and Justin Strong, Los Angeles Air Force Base, California, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which dismissed her constructive removal appeal for lack of jurisdiction without a hearing. For the reasons discussed below, we GRANT the appellant's petition for

---

[1] This case was formerly captioned "*Odenmeyers v. Department of the Air Force*." We have amended the caption to reflect that the appellant's surname is two words.

[2] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

review, VACATE the initial decision, and REMAND the case to the Western Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant was a GS-09 Management Analyst for the agency's Space Missiles Center (SMC) Development Planning Directorate. Initial Appeal File (IAF), Tab 4 at 105-06, Tab 7 at 185.[3] In 2014, the agency underwent a reorganization in which the SMC Development Planning Directorate merged with the SMC Space Development Test Directorate. IAF, Tab 7 at 185. The entity created by this merger is known as the SCM Advanced Systems and Development Directorate (SCM/AD). *Id.* As a result of the reorganization, the appellant's Management Analyst position was abolished, and she was offered reassignment to a GS-09 Training Coordinator position in SCM/AD, which she accepted effective August 24, 2014. IAF, Tab 4 at 1, 105-06, Tab 7 at 185.

¶3 The appellant's duties in this position involved monitoring, recording, and facilitating the training of agency military and civilian personnel, which was initially limited to 80 or 90 individuals who were former Development Planning Directorate employees stationed with the appellant at Los Angeles Air Force Base. IAF, Tab 4 at 1, Tab 5 at 44-46, Tab 7 at 185. She performed these duties successfully during her first year in the position, through September 30, 2015.[4] IAF, Tab 4 at 196-99.

---

[3] We are mindful that the question of whether there is a nonfrivolous allegation of Board jurisdiction must be determined based solely on the sufficiency of the appellant's pleadings and evidentiary submissions, without regard to the agency's conflicting arguments or interpretations of the evidence. *See Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994). We have considered the agency's submissions for purposes of background and context so that we may better understand this pro se appellant's claims.

[4] The appellant's performance year ran from April 1 through March 31, and her performance was rated on a two-tier scale of "meets" and "does not meet." IAF, Tab 4 at 198.

¶4    During this time, however, the merger process was continuing, and effective November 1, 2015, the agency assigned the appellant Training Coordinator duties for the remainder of the SCM/AD employees–former Space Development Test Directorate employees stationed at Kirtland Air Force Base, New Mexico.  IAF, Tab 5 at 50, Tab 7 at 185.  According to the appellant, this more than doubled her workload.  IAF, Tab 4 at 67, 95.  According to the agency, with the assumption of these new duties, the appellant's performance began to falter.  Specifically, her performance was rated "does not meet" in two of five critical elements for the performance year ending March 31, 2016, and her October 11, 2016 progress review reflected continued unacceptable performance in the same critical elements.  IAF, Tab 4 at 200-01.

¶5    On November 2, 2016, the agency placed the appellant on a 90-day performance improvement plan (PIP).  IAF, Tab 5 at 55-65.  After the close of the PIP period, the agency determined that the appellant had failed to demonstrate acceptable performance, and on May 17, 2017, it proposed her removal under 5 U.S.C. chapter 43.  IAF, Tab 7 at 5-10.  The appellant responded to the proposal in writing.  *Id.* at 17-178.  On June 20, 2017, the agency directed the appellant to attend a June 22, 2017 meeting during which she would receive the agency's final decision on her proposed removal.  IAF, Tab 4 at 8.  However, on June 21, 2017, the day before the scheduled meeting, the appellant resigned.[5]  IAF, Tab 5 at 33, Tab 7 at 178.  Her letter of resignation stated that she was resigning "under duress and documented hostile working conditions."  IAF, Tab 7 at 178.

¶6    The appellant filed a Board appeal and requested a hearing, indicating that she was appealing an involuntary resignation.  IAF, Tab 1 at 1-2.  The administrative judge issued an acknowledgment order, notifying the appellant that the Board might lack jurisdiction over her appeal and informing the appellant of

---

[5] The agency had prepared a decision letter through which the charge of unacceptable performance would have been sustained and the appellant removed effective June 22, 2017.  IAF, Tab 7 at 174-76.

her jurisdictional burden, including the need to make nonfrivolous allegations of Board jurisdiction in order to obtain her requested hearing. IAF, Tab 2 at 2-4. The administrative judge ordered her to file evidence and argument on the issue. *Id.* at 4. Both parties responded, and after the record on jurisdiction closed, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction without a hearing. IAF, Tabs 4-7, Tab 9, Initial Decision (ID). Specifically, the administrative judge found that the appellant failed to make a nonfrivolous allegation that her resignation was involuntary based on intolerable working conditions or a coercive threatened adverse action. ID at 10-14.

¶7      The appellant has filed a petition for review, disputing the administrative judge's jurisdictional analysis and arguing that the administrative judge erred in finding that she failed to make a nonfrivolous allegation of Board jurisdiction. Petition for Review (PFR) File, Tab 1. The agency has responded to the petition for review, and the appellant has filed a reply to the agency's response. PFR File, Tabs 5-6. After the record on review closed, the appellant filed a pleading which she characterized as a "petition to withdrawal and dismiss case #SF-0752-0585-I-1 as of August 3rd 2018." PFR File, Tab 7. The agency has objected to the appellant's request. PFR File, Tab 8.

## ANALYSIS

¶8      Withdrawal of an appeal or of a petition for review is an act of finality that has the effect of removing the appeal from the Board's jurisdiction. *Okello v. Office of Personnel Management*, 112 M.S.P.R. 563, ¶ 5 (2009); *Wilson v. U.S. Postal Service*, 41 M.S.P.R. 628, 629 (1989). Hence, a withdrawal must be by clear, unequivocal, and decisive action. *Leno v. Department of Veterans Affairs*, 90 M.S.P.R. 614, ¶ 3 (2002). In this case, we find that the appellant's request to withdraw is not clear and unequivocal because she has not specified whether she wishes to withdraw the petition for review only or the appeal in its entirety. PFR File, Tab 7 at 1. We therefore deny the appellant's request. If the appellant

wishes to withdraw her appeal in its entirety, she should raise the issue with the administrative judge on remand.

¶9        Employee-initiated actions are presumed to be voluntary, and the Board lacks jurisdiction over voluntary actions. *Polen v. Department of Defense*, 72 M.S.P.R. 1, 5 (1996).  However, employee-initiated actions that appear voluntary on their face are not always so, and the Board may have jurisdiction over such actions under 5 U.S.C. chapter 75 as "constructive" adverse actions. *Bean v. U.S. Postal Service*, 120 M.S.P.R. 397, ¶ 7 (2013).  The Board has recognized a variety of fact patterns that may support a finding of a constructive adverse action within its jurisdiction. *Id.*, ¶ 8.  However, all constructive adverse actions have two things in common:  (1) the employee lacked a meaningful choice in the matter; and (2) it was the agency's wrongful actions that deprived the employee of that choice. *Id.*  Assuming that the jurisdictional requirements of 5 U.S.C. chapter 75 are otherwise met, proof of these two things is sufficient to establish Board jurisdiction. *Id.*  If the appellant makes a nonfrivolous allegation that her resignation or retirement constituted a constructive removal, then she is entitled to a hearing on the jurisdictional issue. *Campbell v. Department of the Treasury*, 37 M.S.P.R. 92, 94 (1988).  In this case, the administrative judge found, and we agree, that the appellant's allegations seem to suggest a claim of involuntariness under two theories—that the appellant had no choice but to resign due to intolerable working conditions and that the agency's proposed adverse action was one that the agency knew could not be substantiated.  ID at 10, 13.

¶10       When intolerable working conditions are alleged, the Board will find a resignation involuntary only if the appellant demonstrates that the agency engaged in a course of action that made working conditions so difficult or unpleasant that a reasonable person in her position would have felt compelled to resign. *Markon v. Department of State*, 71 M.S.P.R. 574, 577-78 (1996).  In examining this issue, the Board will consider the totality of the circumstances. *Shoaf v. Department of Agriculture*, 97 M.S.P.R. 68, ¶ 13 (2004), *aff'd*, 158 F.

App'x 267 (Fed. Cir. 2005). In addition, although a resignation or retirement is not considered involuntary merely because an employee chose to resign in the face of an agency's threat to remove her for cause, the agency must nonetheless have had "reasonable grounds for threatening to take an adverse action." *Schultz v. United States Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987). If the agency knew that the reason for a threatened removal could not be substantiated, the threatened action by the agency is purely coercive and the resulting resignation may be involuntary. *Id.*

¶11       In deciding whether the appellant made a nonfrivolous allegation of involuntariness, the administrative judge in this case declined to consider matters predating her November 2, 2016 PIP. ID at 11. Although we agree with the administrative judge that the most probative evidence of involuntariness usually concerns matters close in time to the alleged constructive removal, ID at 9, 11; *see Terban v. Department of Energy*, 216 F.3d 1021, 1024-25 (Fed. Cir. 2000), the appellant in this case has alleged a continuous and related series of coercive agency actions beginning shortly after June 29, 2015, when she requested reasonable accommodation for conditions arising out of a congenital heart defect, IAF, Tab 4 at 1, 83, 216. Specifically, the appellant requested and was granted, 2 days of telework per week effective September 7, 2015, in order to better manage work-related stress that could adversely affect her condition. *Id.* at 208-16. We therefore find that this time period represents an appropriate starting point for the inquiry.

¶12       According to the appellant, after she disclosed her disabling heart condition, her first- and second-level supervisors began a campaign of bullying and harassment against her. Specifically, she alleges that her supervisors delayed in ruling on her request for reasonable accommodations, and that the agency then "dumped" the additional workload on her in November 2015, without providing her the proper tools to do the job. PFR File, Tab 1 at 7-10, 18, 20. In December 2015, the appellant filed an informal equal employment opportunity

(EEO) complaint, alleging that her second-level supervisor discriminated against her based on disability, age, race, color, sex, and national origin by, among other things, assigning her additional work and obstructing her performance of that work. IAF, Tab 4 at 91-97. The appellant subsequently filed a formal complaint. *Id.* at 89. The record shows that the appellant took a leave of absence from March 23 through May 1, 2016, which she appears to allege was due to a compensable condition of work-related stress. PFR File, Tab 1 at 4; IAF, Tab 4 at 217-20. She alleges that shortly thereafter, her second-level supervisor confronted her about her EEO complaint. PFR File, Tab 1 at 4. According to the appellant, the agency later reprimanded this supervisor for her behavior. *Id.*

¶13     In June 2016, the appellant received her annual performance evaluation for the year ending March 31, 2016, which reflected unacceptable performance in two critical elements. IAF, Tab 4 at 201. In August 2016, the appellant filed an EEO complaint concerning her first-level supervisor and containing similar allegations to those contained in her previous EEO complaint, which was still pending before the agency.[6] *Id.* at 85-88. During this time, the appellant's relationship with her first- and second-level supervisors continued to deteriorate. The appellant alleges that they subjected her to overbearing scrutiny, harassment, and humiliation, and the record shows that she raised these issues with her superiors outside EEO channels on several occasions. PFR File, Tab 1 at 10-12; IAF, Tab 4 at 259-71, 278, 286-87, 313.

¶14     At the beginning of October 2016, the agency moved the physical location of the appellant's office in an attempt to alleviate the friction between her and her supervisors. IAF, Tab 4 at 51, 265, 311, Tab 7 at 186-87. Shortly thereafter, the appellant received a negative interim performance review, and on November 2, 2016, her first-level supervisor placed her on a PIP. IAF, Tab 4 at 200, Tab 5 at 55-62. The PIP notice stated that the appellant would be provided with

---

[6] It is not clear what became of this second EEO complaint.

training, assistance, and feedback during the PIP period, but it also warned her that her telework arrangement could be canceled before the expiration of the 90-day PIP period if she failed to improve her performance in the near term. IAF, Tab 5 at 61-62.

¶15    After being placed on the PIP, the appellant disputed the reasons for the PIP and requested to be placed under different supervision. IAF, Tab 4 at 46-55. The agency granted this request, and a new first-level supervisor was assigned to oversee the PIP. IAF, Tab 7 at 189. Nevertheless, the appellant's new first-level supervisor continued to consult with her former supervisor regarding the parameters of the appellant's job duties and to obtain access to certain information that he needed to administer the PIP. IAF, Tab 7 at 190. During the first 45 days of the PIP, the appellant's new supervisor gave her feedback and guidance approximately once a week and identified numerous deficiencies in her work output. IAF, Tab 5 at 64-65, 79-80, 94-96, 135, Tab 6 at 20-22, 50-51, 82-83. The appellant responded to this feedback on several occasions, objecting to her new supervisor's continued consultation with her former supervisor, contesting the propriety of her increased workload, and explaining variously that the performance feedback was inaccurate or that any deficiencies in her work product were due to lack of support and inability to access certain information. IAF, Tab 6 at 17-19, 44-47, 48.

¶16    On December 20, 2016, the appellant's new supervisor met with her and informed her that her performance midway through the PIP was still unsatisfactory, and that he would be terminating her telework agreement effective January 3, 2017, because working full-time in the office would allow for closer supervision and afford her a better opportunity to improve her performance. IAF, Tab 4 at 29, Tab 6 at 91, Tab 7 at 190. However, through January and up to the end of the PIP, on February 8, 2017, the appellant continued to receive feedback

very critical of her performance, and with which she continued to disagree.[7] IAF, Tab 6 at 93-95, 101, 104, 106-07, 119-20, 126-29, Tab 7 at 190.

¶17    After the agency proposed the appellant's removal on May 10, 2017, she began an extended period of stress-related sick leave. PFR File, Tab 1 at 4; IAF, Tab 4 at 10. The appellant appears to allege that the Office of Workers' Compensation Programs deemed her stress to be compensable. PFR File, Tab 1 at 4. According to the appellant, her leave was scheduled to end on June 23, 2017. *Id.* However, on June 20, 2017, the agency instructed the appellant to attend a meeting on June 22, 2017, and receive its decision letter. IAF, Tab 4 at 8. The appellant resigned the following day. IAF, Tab 5 at 33, Tab 7 at 178.

¶18    Taking all of the appellant's allegations as true and interpreting the record in the light most favorable to her, we find that she has made a nonfrivolous allegation that her resignation amounted to a constructive removal within the Board's jurisdiction and that she is therefore entitled to a hearing on that issue. *See Swift v. U.S. Postal Service*, 61 M.S.P.R. 29, 33 (1994). Regarding the appellant's ability to exercise free choice in her resignation, we observe that, approximately 6 months prior, the agency revoked her telework agreement, which the appellant asserts was in place as a reasonable accommodation to allow her to manage work-related stress that could cause fatal complications related to her heart condition.[8] IAF, Tab 4 at 1, 29, 83, 216. Indeed, 5 months after the agency revoked this accommodation, the appellant received the notice of proposed removal and took a leave of absence for work-related stress. It was just before this leave of absence was scheduled to end that the agency decided to deliver the removal notice. We find that an employee with compelling medical reasons to

---

[7] The appellant's supervisor extended the PIP period by 7 days to account for leave that the appellant took over the holidays. IAF, Tab 6 at 107.

[8] We make no finding as to whether the appellant was "disabled" within the meaning of 29 C.F.R. § 1630.2(g)(1), or whether the telework arrangement was a reasonable accommodation. However, the appellant certainly viewed it as such, and we find that she has made a nonfrivolous allegation that it was. IAF, Tab 4 at 211, 216.

avoid excessive stress, and who was still in the midst of recuperating from a previous stressful event at work, could reasonably feel compelled to resign rather than appear at a meeting at which she had every expectation of being removed. *See Koury v. Department of Defense*, 84 M.S.P.R. 219, ¶ 14 (1999) (discussing the effect of health concerns on the issue of voluntariness).

¶19        We also observe that the appellant sought multiple avenues of redress to improve her working conditions before she resigned.  *Cf. Baker v. U.S. Postal Service*, 84 M.S.P.R. 119, ¶¶ 22-23 (1999) (finding that the appellant failed to show that his resignation was involuntary because he failed to pursue other reasonable options before resigning).  Apart from her EEO complaints, which were apparently still pending with the agency at the time of her resignation more than 18 months after she initiated EEO contact, IAF, Tab 4 at 76, Tab 5 at 31 Tab 7 at 18, PFR File, Tab 1 at 2, the record shows that the appellant persistently sought relief through other means as well.  She repeatedly notified various individuals in her chain of command that she lacked sufficient resources, e.g., training, an alternate training manager for when she was unavailable, and functioning information technology systems, to perform her new duties satisfactorily.  These communications began shortly after she took on the additional duties in November 2015, continued throughout the PIP period, and were reiterated in her response to the notice of proposed removal.  IAF, Tab 4 at 28, 34-37, 46-47, 60, 62-64, 82-83, 141, 143, 147, 149-56, 159-63, 170-75, 185-87, 252, 254, 256, 260-64, 268, 271, 273-82, 284, 289, 308, Tab 7 at 19-20. The record also shows that the appellant repeatedly sought reassignment during this time period, but to no avail.  IAF, Tab 4 at 10-11, 80-83.

¶20        Although the appellant is part of a collective bargaining unit and does not seem to have pursued a grievance on any of these matters, IAF, Tab 5 at 29, 33, the Board has found that an appellant is not necessarily required to have pursued all statutory avenues of redress before her resignation will be found involuntary, *Heining v. General Services Administration*, 68 M.S.P.R. 513, 523 (1995).

Considering the totality of the circumstances, including the appellant's medical condition and her history of unsuccessful attempts to ameliorate her working conditions, we find that when she received the agency's notice to appear at a meeting in 2 days and receive its decision letter, she could reasonably have believed that she was out of options. *See Jones v. Department of the Treasury*, 107 M.S.P.R. 466, ¶ 10 (2007) (finding that time pressure is a factor to consider in determining whether a resignation or retirement was involuntary).

¶21 As for whether the appellant's freedom of choice was proscribed by improper agency actions, we acknowledge that undergoing a PIP or facing an adverse action is inherently stressful and that no employee is guaranteed a work environment free from stress. *Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000). However, the agency in this case knew that the appellant had a serious medical condition that required careful stress management, and during what was probably the most stressful time in her career, it revoked the telework arrangement that was previously in place to help her manage that stress. It may be that telework generally is a discretionary workplace flexibility that may be curtailed for employees "whose performance or conduct warrants more close supervisory direction than telework may provide." IAF, Tab 4 at 29, 45; Department of Defense Instruction 1035.01, Telework Policy, Enclosure 3 (Apr. 4, 2012), https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/ dodi/103501p.pdf.[9] However, when telework is in place as a form of reasonable accommodation, the agency's authority to alter or revoke the arrangement is limited by the Rehabilitation Act. The regulations of the Equal Employment Opportunity Commission (EEOC) implementing the statute require an agency to make reasonable accommodation to the known physical and mental limitations of a qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship. *See* 29 C.F.R. §§ 1630.2(o)-(p);

---

[9] The Board may take administrative notice of public documents. *See Azdell v. Office of Personnel Management*, 88 M.S.P.R. 319, 323 (2001).

*see, e.g.*, *Thomas v. Department of the Navy*, [123 M.S.P.R. 628](), ¶¶ 14-15 & n.3 (2016) (finding that the appellant made a nonfrivolous allegation that the agency constructively suspended her when, among other things, the agency revoked her telework, thus presenting her with the choice of taking leave or working against her doctor's orders); *Hamblin v. Department of Justice*, EEOC Appeal No. 0720070041, 2009 WL 2985807, *5-*6 (Sept. 3, 2009) (finding that the agency committed disability discrimination when it revoked an employee's reasonable accommodation of an early work schedule without proper justification).

¶22       A reasonable accommodation must be an effective accommodation, i.e., one that allows the employee to perform the essential functions of her position. EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, EEOC Notice 915.002 (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada. According to the agency, the appellant was not satisfactorily performing the essential functions of her position while the telework arrangement was in place. IAF, Tab 4 at 200-01, Tab 5 at 55-65, Tab 7 at 190. Nevertheless, based on the results of the PIP, it also appears to be the agency's position that revoking the telework agreement did not make a significant difference in the appellant's ability to perform. IAF, Tab 7 at 5-10, 190. It is therefore far from clear that the appellant's telework was undermining her performance, that it imposed an undue hardship on the agency, or that revocation of her telework was grounded in sound business practice. It may be that the appellant was not entitled to reasonable accommodation in the first place because she was not a "qualified" individual with a disability, i.e., one who can perform the essential functions of her position with or without reasonable accommodation. *See Haas v. Department of Homeland Security*, [2022 MSPB 36](), ¶¶ 28-29. Nevertheless, whether the appellant's unsatisfactory performance was attributable to her own shortcomings or to the agency's failure to furnish her the necessary resources is a dispute of fact that cannot be resolved

without a hearing. For these reasons, and to the extent that the revocation of her telework agreement influenced her resignation, we find that the appellant has made a nonfrivolous allegation that this agency action was improper.

¶23        As for the other matters that influenced the appellant's resignation, including the agency's alleged failure to provide her the information and support she needed to do her job and the alleged hostility of her first- and second-level supervisors, we find that the appellant has made a nonfrivolous allegation that these constituted improper agency actions as well. Likewise, the appellant has nonfrivolously alleged that the agency failed to give her the support, information, and resources that she needed to do her job during the PIP period which, if true, would amount to a failure to provide her with a reasonable opportunity to demonstrate acceptable performance, as required to support an adverse action under 5 U.S.C. chapter 43. *See* 5 U.S.C. § 4302(c)(6); *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355, 1360-61 (Fed. Cir. 2021); 5 C.F.R. §§ 432.103(d), .105(a). If, as the appellant alleges, the agency failed to provide her adequate support, information, and resources despite her many requests, this may be sufficient to support a finding that the agency knew that the reason for her removal could not be substantiated and that the threatened removal was purely coercive. *See Adorador v. Department of the Air Force*, 38 M.S.P.R. 461, 466-67 (1988); *Barthel v. Department of the Army*, 38 M.S.P.R. 245, 251 (1988).

**ORDER**

¶24     For the reasons discussed above, we REMAND this case to Western Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                              _____/s/ for_____

                                           Jennifer Everling
                                           Acting Clerk of the Board
Washington, D.C.